UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHASE COPELAND,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | No. 15-27 |
| OFFSHORE MARINE<br>CONTRACTORS, INC.,<br>    Defendant | SECTION "E"(3) |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by Defendant, Offshore Marine Contractors, Inc. ("OMC").[1] OMC seeks summary judgment on Plaintiff's maintenance-and-cure claim under the Fifth Circuit's decision in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968).[2] The motion is opposed,[3] and oral argument was held on April 4, 2016, at 9:00 a.m. For the reasons that follow, the motion for partial summary judgment is **DENIED**.

## BACKGROUND

This is a maritime personal injury case. Plaintiff Chase Copeland claims that, on April 23, 2013, while working as an engineer for OMC on board a jack-up vessel, the *LUCAS BOURG*, he was "injured while applying a heat shield to the engine when he slipped and fell off of a three-inch wide pipe on which he was standing."[4] Copeland argues the incident resulted from OMC's negligence in "failing to furnish . . . a safe place to work by requiring its employees on the *LUCAS BOURG* to stand on a three-inch wide pipe to complete their job duties."[5] Copeland contends that, as a result of the incident, he suffered "serious,

---

[1] R. Doc. 38.
[2] *See* R. Doc. 38 at 1.
[3] R. Doc. 41.
[4] R. Doc. 1 at 1.
[5] R. Doc. 1 at 2.

1

disabling[,] and permanent injuries to his hand and neck."[6] Copeland filed the instant lawsuit on January 1, 2015, to recover for his alleged hand and neck injuries, asserting causes of action for negligence, unseaworthiness, and maintenance and cure, as well as punitive damages for the willful and wanton failure to pay maintenance and cure.[7] Copeland has since clarified that his maintenance-and-cure claim is only with respect to his alleged neck injury.

OMC filed this motion for partial summary judgment on February 29, 2016. OMC seeks summary judgment on Copeland's maintenance-and-cure claim with respect to his neck injury, arguing Copeland is not entitled to maintenance and cure under *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968).[8] OMC argues, because Copeland intentionally concealed evidence of significant pre-existing injuries to his neck when completing his employment application, Copeland is not entitled to maintenance and cure under the Fifth Circuit's decision in *McCorpen*.[9] In sum, OMC seeks summary judgment on Copeland's claim for maintenance and cure for his neck injury via the "*McCorpen* defense."

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] "An issue is material if its resolution could affect the outcome of the action."[11]

---

[6] R. Doc. 1 at 3.
[7] R. Doc. 1 at 3.
[8] *See* R. Doc. 38 at 1.
[9] R. Doc. 38 at 1. OMC also contends Copeland has an extensive history of back problems, which he failed to reveal to OMC prior to being hired. R. Doc. 38-2 at 1. However, Copeland is not seeking damages for injuries to his back in this case, so Copeland's alleged history of back problems and whether he failed to disclose those problems to OMC are irrelevant. The Court need not address OMC's motion insofar as it contends Copeland concealed prior back injuries from OMC.
[10] Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[11] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[12] All reasonable inferences are drawn in favor of the non-moving party.[13] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[14]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[15] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[16]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, as in this case, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[17] If the movant fails to

---

[12] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[13] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[14] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[15] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[16] *Celotex*, 477 U.S. at 322–24.
[17] *Id.* at 331–32 (Brennan, J., dissenting).

affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[18] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[19] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[20]

## LAW AND ANALYSIS

OMC maintains, under the Fifth Circuit's decision in *McCorpen*, that Copeland is not entitled to be paid maintenance and cure for his neck injury because he intentionally concealed "evidence of significant pre-existing injuries which, had they been disclosed, would have resulted in [Copeland] not being hired."[21]

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel."[22] A seaman's employer may, however, rely on certain legal defenses, such as the "*McCorpen* defense," to deny claims for maintenance and cure.[23] In *McCorpen*, the Fifth

---

[18] *See id.* at 332.
[19] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[20] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and internal quotation marks omitted).
[21] R. Doc. 38 at 1. *See generally* R. Doc. 38-2.
[22] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006).
[23] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005). *See also Lett v. Omega Protein, Inc.*, 487 F. App'x 839, 848 (5th Cir. 2012).

4

Circuit concluded that, while maintenance and cure may be awarded to a seaman who has suffered from a pre-existing injury, a seaman forfeits his or her right to maintenance and cure when he or she fails to disclose certain medical facts, or misrepresents those facts, when asked about them in connection with an employment application.[24] An employer will prevail on this defense, absolving the employer of its obligation to an injured seaman, by establishing: (1) the seaman intentionally concealed or misrepresented information concerning a prior medical condition or injury; (2) the misrepresented or concealed information was material to the employer's decision to hire the seaman; and (3) a causal connection between the non-disclosed injury or condition and an injury or condition complained of in the suit at bar.[25]

OMC, as the party seeking summary judgment, has the burden of establishing there are no material facts in dispute and, therefore, OMC is entitled to judgment as a matter of law on Copeland's maintenance-and-cure claim. OMC's summary-judgment burden, as applied to the *McCorpen* defense, requires OMC to establish the absence of disputed material facts with respect to each of the three prongs of the defense. OMC is unable to do so with respect to *McCorpen*'s first prong, and summary judgment must be denied for that reason.

The first prong of the *McCorpen* defense—the "intentional concealment" prong—is "an essentially objective inquiry," and does not require a finding of subjective intent to

---

[24] *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547, 549 (5th Cir.), *cert. denied*, 393 U.S. 894 (1968). *See also Brown*, 410 F.3d at 170–71, 73 (quoting *McCorpen*, 396 F.2d at 549 ("[W]here the [employer] requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure.")).

[25] *McCorpen*, 396 F.2d at 548–49. *See also Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (citations omitted); *Brown*, 410 F.3d at 171.

5

conceal or misrepresent medical information on the part of the seaman.[26] "*McCorpen*'s intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination."[27] "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information satisfies the 'intentional concealment' requirement."[28] In this case, the parties strongly disagree on the application of this prong of the *McCorpen* defense, *i.e.*, whether Copeland, in connection with his employment application, intentionally misrepresented or concealed medical information concerning pre-existing injuries to his neck.

Copeland applied for a position as an unlicensed engineer at OMC on June 18, 2012.[29] The parties agree that, in connection with his employment application, Copeland was required to complete certain pre-employment medical questionnaires and to undergo a pre-employment physical.[30] One such questionnaire was called the "Second Injury Fund – Employee Medical History Questionnaire."[31] By its own terms, the specific purpose of this questionnaire was to determine whether the prospective employee suffered from any pre-existing medical conditions or disabilities.[32] A question in the Employee Medical History Questionnaire was: "Have you ever had back trouble or injury to your back, head or neck?"[33] Copeland answered "*Yes*," explaining he had *broken his neck* in the past.[34]

---

[26] *Brown*, 410 F.3d at 174.
[27] *Id.* at 175.
[28] *Id.* at 174 (citing *Vitcovich v. OCEAN ROVER, O.N.*, 106 F.3d 411 (9th Cir. 1997)).
[29] R. Doc. 38-1 at 1, ¶1; R. Doc. 41-1 at 1, ¶1.
[30] R. Doc. 38-1 at 1, ¶¶2–3; R. Doc. 41-1 at 1 ¶¶2–3.
[31] *See* R. Doc. 38-2 at 4; R. Doc. 38-3 at 4–5.
[32] R. Doc. 38-3 at 4. The questionnaire stated: "If a work-related injury or disability is caused, or made worse, by a 'pre-existing' condition, [OMC] may be able to seek partial reimbursement of the benefit dollars paid to you, or on your behalf, from the Louisiana Second Injury Fund." R. Doc. 38-3 at 4. The questionnaire further noted that, "[i]n order for [OMC] to be considered for reimbursement from the Second Injury Fund, it has to show that it knowingly hired or knowingly retained the employee with a pre-existing disability. To establish this fact, [OMC] requires all employees to complete the attached questionnaire." R. Doc. 38-3 at 4.
[33] R. Doc. 38-3 at 5.
[34] R. Doc. 38-3 at 5 (emphasis added).

Another question asked: "What operations, accidents, broken bones, strains or serious illnesses have you had?"[35] Again, Copeland responded that he had, at some point in his past, sustained a "*broken neck*."[36] OMC does not dispute that, in filling out this questionnaire, Copeland disclosed he had previously sustained what he referred to as a broken neck. In addition to the Employee Medical History Questionnaire, Copeland was required to complete a second questionnaire prior to undergoing a pre-employment physical administered by Complete Occupational Health Services. In the Complete Occupational questionnaire, Copeland answered "no" to whether he currently or "significantly in the past" had an "injured back/back pain" or an "injured neck/neck pain."[37] OMC emphasizes Copeland's responses to this pre-employment questionnaire to argue that Copeland intentionally concealed pre-existing neck injuries.

OMC argues, based on Copeland's responses to the Complete Occupational questionnaire, that Copeland "intentionally hid from [OMC] . . . overwhelming evidence[] of chronic neck problems."[38] OMC contends it was unaware Copeland visited a number of physicians for neck pain in the years and months leading up to his employment with OMC, nor was OMC aware that Copeland allegedly suffered an on-the-job injury while working for a different company in June of 2011.[39] In support, OMC points to Copeland's certified medical records, which show that Copeland sought treatment for neck pain in December of 2006, January of 2007, February of 2009, and January of 2012.[40] Copeland does not dispute that he sought treatment for neck pain, nor does Copeland dispute that

---

[35] R. Doc. 38-3 at 5.
[36] R. Doc. 38-3 at 5 (emphasis added).
[37] R. Doc. 38-11 at 2.
[38] R. Doc. 38-2 at 1.
[39] *See generally* R. Doc. 38-1 at 2–4.
[40] *See* R. Doc. 38-1 at 2–3, ¶¶12–22.

all of his consultations with physicians regarding his neck were not disclosed to OMC.[41] Instead, Copeland notes that OMC was aware that Copeland reported he sustained a broken neck in his past.[42] Copeland specifically indicated on the Employee Medical History Questionnaire that he had broken his neck in the past, which put OMC on notice that Copeland, potentially, had a *serious* neck condition which could cause problems in the future.

OMC cites *Lett v. Omega Protein Corp.*[43] and *Wimberly v. Harvey Gulf International Marine, LLC*,[44] as support for its argument that Copeland, in disclosing his prior neck injury in the Employee Medical History Questionnaire, made only a "tepid admission" of his neck problems, which amounts to intentional concealment under *McCorpen*.[45] OMC contends, although Copeland disclosed that he had previously broken his neck in the Employee Medical History Questionnaire, that disclosure was only a "tepid admission" of his neck problems, and Copeland was required to do more. In particular, OMC argues Copeland should have revealed and elaborated on his neck problems in the second pre-employment questionnaire and should have disclosed the condition to the physicians conducting his pre-employment physical. That he did not further reveal his neck problems, according to OMC, amounts to intentional concealment. In sum, OMC maintains that, although Copeland disclosed in the Employee Medical History Questionnaire a broken neck in years past, this disclosure was not enough, as the Court must look to what Copeland said, or did not say, in the second questionnaire and during his pre-employment physical. The Court is not persuaded by this argument. *Lett* is not a

---

[41] R. Doc. 41-1 at 2, ¶¶12–22.
[42] *See generally* R. Doc. 41-1.
[43] 487 F. App'x 839 (5th Cir. 2012).
[44] No. 14-1208, 2015 WL 5089538 (E.D. La. Aug. 27, 2015).
[45] R. Doc. 38-2 at 13 –14.

"tepid admission" case, as the seaman in that case altogether failed, in both a pre-employment questionnaire and during his pre-employment physical, to disclose pre-existing neck injuries.[46] *Wimberly* admittedly is a "tepid admission" case, as the seaman disclosed back pain in a pre-employment questionnaire but failed to elaborate upon or further explain that condition in the questionnaire or during his pre-employment physical.[47] This case is distinguishable from both *Lett* and *Wimberly*, as Copeland neither completely denied having a pre-existing condition as in *Lett*, nor did Copeland's disclosure amount to a "tepid admission" of a pre-existing condition as in *Wimberly*. Instead, Copeland clearly and without question disclosed a serious neck injury, *i.e.*, a broken neck.

The Court finds support for its decision in *Gregory v. Kirby Inland Marine, LP*, a case decided by this district in which the seaman disclosed a prior injury in the comments section of a health questionnaire but failed to disclose or elaborate on the injury in response to other questions.[48] The *Gregory* court noted the questionnaire did not "instruct the prospective employee to list every single injury or pain he has ever endured. Neither does any case law presented by the parties or reviewed by the Court indicate such a stringent requirement."[49] The *Gregory* court concluded: "The comments section of the Health Questionnaire indicated an elbow injury; hence Defendant Kirby was on notice during the application process that Plaintiff had injured his elbow. Accordingly, the Court finds that Plaintiff did not conceal the fact that his elbow had been injured prior to his employment."[50] As in *Gregory*, Copeland disclosed his prior injury—a broken neck—in

---

[46] *Lett*, 487 F. App'x at 848.
[47] *Wimberly*, 2015 WL 5089538, at *4–5.
[48] *Gregory v. Kirby Inland Marine, LP*, No. 08-4183, 2009 WL 1402229, at *7 (E.D. La. May 14, 2009).
[49] *Id.*
[50] *Id.*

the Employee Medical History Questionnaire. Although Copeland did not disclose or elaborate on his neck problems in the second questionnaire or during his physical, Copeland's disclosure was sufficient to put OMC on notice during the application process of his previous neck injury.

The Court finds OMC has not established that Copeland intentionally concealed or misrepresented pre-existing injuries to his neck. Copeland clearly and unambiguously disclosed the fact that he previously had a serious neck injury. Though OMC argues Copeland never actually broke his neck but only believed, based on conversations with his mother, that he sustained such an injury, this argument is irrelevant.[51] Copeland disclosed the injury, regardless of whether the disclosure was medically accurate, and OMC was on notice that Copeland potentially had serious problems with his neck. Nevertheless, OMC hired Copeland. OMC has not met its burden on *McCorpen*'s first prong. Because OMC has not satisfied the "intentional concealment" prong of the *McCorpen* defense, OMC cannot prevail, and the Court need not address *McCorpen*'s remaining prongs. Summary judgment is denied.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that OMC's motion for partial summary judgment be and hereby is **DENIED**.

**New Orleans, Louisiana, this 11th day of April, 2016.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[51] *See* R. Doc. 38-2 at 4; R. Doc. 38-13 at 12 (Deposition of Chase Copeland).